Marie Schlehofer and Joseph Schlehofer, Appellees, v. United States Brewing Company of Chicago, Appellant.

Gen. No. 19,927. (Not to be reported in full.)

Appeal from the Superior Court of Cook county; the Hon. WILLIAM E. DEVER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Affirmed. Opinion filed November 19, 1914.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

### Statement of the Case.

Action was brought by Marie Schlehofer and Joseph Schlehofer against United States Brewing Company of Chicago, a corporation, to reform a lease by striking out a certain cancellation clause contained therein. From a decree for reformation in favor of the complainant, defendant appeals.

Complainants were the owners of certain premises in Chicago, in which, for six years prior to the fall of 1910, they had conducted a saloon business. They were customers of the Bartholomae & Roesing Brewing & Malting Company. The president and vice-president of that company at that time were also president and vice-president, respectively, of the United States Brewing Company. One Philip Reisz was employed by the former company as a solicitor and collector, and called regularly on complainants at their place of business. In September, 1910, Joseph Schlehofer told Reisz that he would like to go out of the saloon business. Reisz offered to buy his license, but Schlehofer replied that he would not sell the license unless he could rent the saloon premises at the same time. He told Reisz that he wanted $2,000 for the license and $40 a month rent for the saloon premises. Reisz said that he would "talk to Mr. Seitz about it." Seitz was the manager of the Bartholomae & Roesing Brewing and Malting Company, and also had charge of the collection of rents for the United States Brewing Company. After talking the matter over with Seitz, Reisz offered, on behalf of the Bartholomae & Roesing Brewing & Malting Company to pay $1,500 for the license and to take a lease of the saloon for three years at $37.50 per month. This offer was accepted by complainants. They went to the office of Mr. Seitz, where a written agreement was prepared by Seitz and signed by complainants. This agreement was dated September 23, 1910, and recited that for the consideration of $50 paid to complainants by the

Bartholomae & Roesing Brewing & Malting Company, and the further payment of $1,450 to be paid on or before November 2, 1910, complainants agreed to assign to Seitz "the right of reissue from and after this date, of City of Chicago saloon license No. 4886, issued for premises 2612 West 26th street, Chicago, Cook County, Illinois, for the period ending October 31, 1910." Then followed this further provision: "Also in consideration of the above sum of Fifty Dollars ($50.00), we agree to lease to the said Brewing Company our building known as No. 2612 West 26th street, Chicago, Cook County, Illinois, for a period of three years commencing November 1, 1910, and ending October 31, 1913, at a rental of Thirty-seven Dollars and fifty cents ($37.50) per month. Said lease to be in the form used by said Brewing Company and to contain a clause giving the said Brewing Company the option for a further term after the expiration thereof, of two years at the same rental." Seitz testified that after this agreement was signed, he verbally told the United States Brewing Company "what the man wanted"; that he "thinks" it was the president or vice-president he talked to; that a lease was then prepared in the "regular form used by the *United States Brewing* Company," and sent *by that company* to him (Seitz) to be executed. The lease thus prepared was dated September 26, 1910, and named the complainants as lessors and the United States Brewing Company as lessee, and demised the premises of complainants to that company for a three-year term, beginning November 1, 1910, and ending October 31, 1913, at a monthly rental of $37.50. Following the formal words of demise in the lease are ten numbered, printed paragraphs. In a single line at the end of the fifth paragraph was printed the following sentence: "Said lessee has the right to cancel this lease at any time by giving the lessor thirty days' notice of its intention so to do."

This sentence had no relation to anything else contained in the fifth paragraph, and was very inconspicuous. The lease is printed in the English language. Complainants are Bohemians and cannot read English. Seitz knew that this cancellation clause was in "the form used by the Brewing Company." Complainants did not know it. Seitz sent the lease thus prepared to Reisz, telling him to have it executed by complainants.

About the same time, one Radnitzer called upon Seitz, said he was an old friend of complainants and had heard of the proposed sale, and threatened to "block the deal" unless he was paid a commission of $100. Seitz, at first, demurred to this, but finally agreed to allow Radnitzer a credit of $100 upon a bill he owed the Brewing Company, if the company secured the license. Thereupon Reisz and Radnitzer went together to complainants' place of business. There the lease was produced and complainants were asked to sign it. Complainants said that if Radnitzer said the lease was all right, they would sign it. Radnitzer told them it was all right, and they signed it, believing it was an ordinary lease for a term of three years.

WINSTON, PAYNE, STRAWN & SHAW, for appellant; JOHN C. SLADE and JAMES H. WINSTON, of counsel.

CHARLES A. CHURAN for appellees.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

## Abstract of the Decision.

1. REFORMATION OF INSTRUMENTS, § 25*—*when a lease may be reformed for fraud.* In a suit in equity to reform a lease, by striking a cancellation clause inserted either by mistake or fraud, the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

lessee is estopped from asserting a defense which would, in effect, enable it to perpetrate a fraud upon a lessor complainant.

2. REFORMATION OF INSTRUMENTS, § 2*—*when a lease may be reformed for mutual mistake or fraud.* Where a lease with a cancellation clause was executed by the owners who understood that it was according to an agreement to let the premises in question for a certain number of years, the use of a form essentially different from the one agreed upon was *held* to be either the result of mutual mistake, or the lessee corporation was guilty of fraud in its procurement, so that upon either ground the owners were entitled to reformation in equity by a decree striking the cancellation clause from the lease.